# M. W. VANDEPUTTE v. ROLLIN J. SODERHOLM AND OTHERS.

216 N. W. 2d 144.

March 15, 1974—Nos. 44140, 44141, 44142, 44143, 44144.

*Newcome, Wallace & Newcome* and *Jack C. Wallace,* for appellants.

*O'Connor, Green, Thomas, Walters & Kelly* and *Douglas M. McMillan,* for respondent.

Heard before Knutson, C. J., and Peterson, Todd, and Yetka, JJ., and considered and decided upon by the court.

YETKA, JUSTICE.

These actions, each brought by plaintiff as the holder of a promissory note against the maker, were consolidated for trial. All defendants alleged fraud in the inducement as a defense and counterclaimed. The District Court of Rice County ordered summary judgment for plaintiff, and defendants appeal from the judgments entered. We affirm.

In February 1969, the five defendants herein each executed and delivered to plaintiff a promissory note in the amount of $5,000 and bearing 8 percent annual interest.[1] Each of the notes was conditioned upon, and incorporated by reference, an agreement among the parties. An addendum modifying the original agreement was subsequently executed. In summary, the agreement and addendum provided:

That plaintiff transfer the sum of $30,000 to Sea-Glo Products, Inc., (hereafter referred to as the corporation) for use as additional capital.

That the corporation assume notes aggregating $5,000 of which defendants Estrem and Huset were obligors. Plaintiff was to "personally guarantee" payment of the notes by the corporation.

That plaintiff receive 600 shares of the corporation's common stock.

That each of the defendants, in addition to executing his personal note for $5,000 to plaintiff, transfer to plaintiff all stock held by him in the corporation.

Upon payment in full of the $5,000 notes, each of the defendants was to receive the shares of stock previously transferred to plaintiff as well as an additional 50 shares.

This agreement was apparently made because the corporation was unable to borrow funds from the Security State Bank of Kenyon. The bank also was unwilling to loan money to each of

---

[1] Action on the sixth note for $5,000, executed by one R. H. Gilbertson, was not consolidated for trial with those herein.

the individual defendants but was willing to loan $30,000 on a personal note to plaintiff. The record indicates that the bank's president played a very important role in recommending the method of raising the funds.

Following execution of the notes and the agreement by the parties, plaintiff borrowed the $30,000 on his personal note from the bank and deposited the same in the corporation's checking account, and defendants transferred the stock to plaintiff. Plaintiff thereafter assumed the duties set out in the agreement and satisfied the notes owed by defendants Estrem and Huset. The corporation subsequently failed and its stock became worthless.

Defendants asserted as a defense to plaintiff's action for payment of the notes and as a counterclaim that their execution was induced by fraud and that there was a partial failure of consideration with respect to the agreement because plaintiff subsequently, in his management of the corporation, misappropriated a substantial part of the $30,000 which he had transferred to the corporation under the terms of the agreement. On appeal they also, for the first time, have charged that the notes carried usurious interest charges.

Defendants base their allegation of fraud in the inducement upon certain representations made by plaintiff and understandings among the parties reflected in the agreement, addendum, and minutes of meetings of the corporation's board of directors held February 5 and May 2, 1969.

The trial court, after finding that the answer and counterclaim, standing alone, did not create a "triable issue of fact" and that the depositions of the defendants and an affidavit of defendant Huset did not support any of the claims of the defendants, granted plaintiff summary judgment.

In Hanson v. Ford Motor Co. 278 F. 2d 586, 591 (8 Cir. 1960), Mr. Justice Blackmun, then sitting as a circuit judge, carefully reviewed the decisions of the Minnesota Supreme Court and set out the elements which must be proved to establish fraud:

"1. There must be representation;

"2. That representation must be false;

"3. It must have to do with a past or present fact;

"4. That fact must be material;

"5. It must be susceptible of knowledge;

"6. The representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false;

"7. The representer must intend to have the other person induced to act, or justified in acting upon it;

"8. That person must be so induced to act or so justified in acting;

"9. That person's action must be in reliance upon the representation;

"10. That person must suffer damage;

"11. That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury."

This court has approved Mr. Justice Blackmun's summary of the elements of fraud in Davis v. Re-Trac Mfg. Corp. 276 Minn. 116, 149 N. W. 2d 37 (1967).

Defendants by their counterclaims assert that plaintiff induced them to sign the notes by falsely representing that he *would* reorganize and manage the affairs of the corporation and *would* use the $30,000 in capital to do a number of specific things in managing the corporation. These specific representations are enumerated in defendants' counterclaim. Each of the representations set out in the counterclaim consist, not of "past or present" facts, but of promises to perform future acts.

It is a well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place. It is true that a misrepresentation of a present intention could amount to fraud. However, it must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made. Belisle v. Southdale Realty Com-

pany, 283 Minn. 537, 168 N. W. 2d 361 (1969) ; 8A Dunnell, Dig. (3 ed.) § 3827.

Rule 56.05, Rules of Civil Procedure, relating to summary judgments, provides in pertinent part:

"* * * When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere averments or denials of his pleading but must present specific facts showing that there is a genuine issue for trial."

In considering the motion for summary judgment, the trial court had before it the pleadings, motions, affidavits, interrogatories, and the depositions of the five defendants and of plaintiff. Nowhere in these materials is there relevant evidence to support an allegation that plaintiff made either a false representation of a material *past* or *present* fact or a misrepresentation of a present intention to perform a specific act in the future. Even if all of the representations which defendants claim induced them to execute the notes were actually made, the defendants have not shown that a genuine issue exists. There is not, in the affidavits, interrogatories, and depositions, one specific fact shown to support paragraph VIII of defendants' answer, which alleges: "Plaintiff made said representations without intent to perform * * *."

The affidavit of defendant Otis K. Huset makes the sole allegation of a past or present fact: "That plaintiff intentionally and fraudulently represented to the defendants that he had properly obtained the signature of Robert Gilbertson [on a promissory note]." In fact, Robert Gilbertson was one of six persons who executed $5,000 notes to plaintiff. The notes had varying dates of execution. It is difficult to see how the order of Gilbertson's signing could be relevant or material to the charge of fraud brought by these defendants.

Since defendants failed to show, in accordance with Rule 56.05, any specific fact supporting their claim that plaintiff

made a false representation of a material past or present fact, plaintiff's motion for summary judgment was properly granted.

Defendants further contend that in granting summary judgment the court ignored their allegation that there was a partial failure of consideration due to plaintiff's alleged diversion of corporate funds to his personal use. Defendants' claim apparently is that the trial court could not grant summary judgment because the fact issue of whether or not plaintiff diverted corporate funds to his own use must be resolved by trial. However, defendants have failed to present specific facts to create a genuine issue for trial. It appears that plaintiff received total compensation of only $6,500 for all of his services, and, in addition, contributed some $3,300 over and above the personal note proceeds in his own funds to help the corporation. It seems inconceivable that plaintiff could be expected to perform the managerial services defendants enumerated for the corporation without any payment whatever, and there is no specific evidence of misappropriation of funds by plaintiff. Furthermore, the record shows that the $30,000 was to be used as a temporary alleviation only, all of the parties recognizing that the corporation would need considerably more funds to be successful in the future and, indeed, the record speaks of a future necessity of raising from $150,000 to $200,000.

Defendants further claim that the trial court erred in ignoring material fact issues relating to: (a) The ambiguous maturity date of the notes in the addendum to the agreement; (b) usury in the loan transaction; and (c) the reasonableness of attorneys' fees granted plaintiff.

None of these issues was raised in the pleadings, nor are they alluded to in the records of the pretrial conference and the hearing on the motion for summary judgment. They are raised for the first time by this appeal. This court has consistently held that it will not decide issues raised for the first time on appeal. 1B Dunnell, Dig. (3 ed.) § 384.

We feel compelled to make some comment on defendants' argu-

ment that the trial court could not properly grant a summary judgment without hearing evidence on the issue of attorneys' fees. Plaintiff appears to answer this contention adequately when he cites the rule that the determination of the reasonable value of legal services, "involves a question of fact to be answered in the light of the peculiar circumstances of each individual case." Meagher v. Kavli, 251 Minn. 477, 494, 88 N. W. 2d 871, 883 (1958); see, Obraske v. Woody, 294 Minn. 105, 199 N. W. 2d 429 (1972); O'Donnell v. McGee Trucks, Inc. 294 Minn. 110, 199 N. W. 2d 432 (1972). In the Obraske case, we stated the following concerning the trial court's setting of attorneys' fees:

"A large fee is not necessarily an unreasonable fee. On the other hand, in cases involving the awarding of reasonable attorneys' fees, we do not deem it to be unduly burdensome on attorneys to require them to present probative evidence to the trial court to assist it in setting the amount of the fees. In that connection it would be helpful to the trial court, and to this court on appeal, to have, if possible, in addition to a recitation of the services performed and to be performed in the future, testimony regarding the time consumed by the attorney in performing his services or such other probative evidence as may assist the trial court in arriving at a fair and reasonable fee. The trial court may also take into consideration such factors as the ability and experience of the attorneys involved, the amount involved, the responsibilities assumed by the attorneys in the case, and the results obtained." 294 Minn. 109, 199 N. W. 2d 432.

We would prefer in this type of case that the trial court make an adequate record in the form of affidavits and time records for the work performed by the attorneys in each case, but here the trial court had before it, and carefully reviewed, all of the records of the proceedings, including seven depositions, affidavits, and interrogatories. Under these circumstances, it is difficult to see that anything further will be accomplished by hearing evidence as to the reasonableness of attorneys' fee. The

fee of $750 on each of the notes, when the length and complexity of the proceedings are considered, does not appear to be an abuse of the trial court's discretion.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.