Roy A. BERG, et al., Respondents,

v.

XERXES–SOUTHDALE OFFICE BUILDING CO., etc., Appellant,

Western Life Insurance Company, et al., Defendants.

No. 49733.

Supreme Court of Minnesota.

Feb. 29, 1980.

Henson & Efron, Robert F. Henson and Stuart T. Williams, Minneapolis, for appellant.

O'Neill, Burke & O'Neill, John B. Burke, Jr., and Michael R. O'Brien, St. Paul, for respondents.

Heard before ROGOSHESKE, KELLY, and TODD, JJ., and considered and decided by the court en banc.

TODD, Justice.

The respondents sought to foreclose a mortgage given to them by the appellant, a limited partnership. The partnership counterclaimed, alleging fraud, and seeking to have the mortgage declared satisfied. Because the trial court believed that the alleged fraudulent acts related to future events and were thus not actionable, and that, even if there had been fraud, it had been waived, the court allowed the mortgage foreclosure. We reverse and remand.

Roy A. Berg and the other respondents formed a limited partnership for the purpose of acquiring, managing, and operating certain commercial property in Edina, Minnesota. Their general partner was McGlynn-Garmaker Company. In 1971, McGlynn-Garmaker, through Richard Garmaker, approached the limited partners and sought additional capital for the completion of a building then under construction. At the same time, Garmaker contacted John G. Mutschler, a licensed nonpracticing attorney, and an accountant, who operated his own consulting business in the field of employee benefit plans. Mutschler had made investments in Garmaker promotions in the past, and Mutschler became interested in this one.

Garmaker showed Mutschler the building which was, although not completed, partially occupied and generating some income. Garmaker, on behalf of respondents, also prepared a pro forma operating statement for 1972 which he showed to Mutschler. The pro forma statement showed a positive cash flow and represented the square footage available for rental. Respondents, however, were in possession of a 1971 financial statement which disclosed a negative cash flow. When respondents declined to invest more money in the building, Mutschler used the pro forma statement to recruit a new limited partnership for which he received a fee of $12,000 from Garmaker. Mutschler also bought one share of the new partnership for $13,000. The new partnership, operating under the name of Xerxes-Southdale Office Building Co., bought out the respondents' interest in the building and gave them a mortgage on the building securing the transfer of interest. The mortgage was due in 1979 and called for payment of quarterly interest installments. McGlynn-Garmaker Company remained the general partner in the new partnership.

The building did not turn a profit, and in late 1973 Garmaker requested that the new limited partnership contribute more capital. This request prompted Mutschler to take an active interest in the partnership. In 1974, Mutschler became concerned over the financial stability of McGlynn-Garmaker Company. In order to avoid the consequences of a bankruptcy proceeding, Mutschler purchased for himself the general partner's share of the business. Upon examining the records of the company, Mutschler discovered the existence of the 1971 financial statement showing the negative cash flow. He also determined that the actual square footage of rental space was less than that shown on the pro forma statement, although this fact was balanced by the fact that the pro forma statement had underestimated the actual rental value of the building on a square foot basis.

Mutschler ceased making quarterly interest payments on the mortgage and called for a meeting with the respondents. He confronted them with the information he then possessed. At that time, he gave them the option of discounting the note or waiting until the business became profitable before they received payment. The respondents rejected this proposal and commenced

an action to foreclose the mortgage.[1] In its conclusions of law, the trial court held that the pro forma statement was, at best, an estimate or future projection which precluded it from constituting actionable fraud. The trial court further held that since Mutschler was a sophisticated investor, he was not entitled to rely on the pro forma statement. Lastly, the trial court held that the actions of Mutschler constituted a waiver of any fraud claims and allowed respondents to amend their pleadings after the trial to include the issue of waiver. Judgment was ordered for respondents which included recovery of their principal, interest, costs, and attorneys fees. A mortgage sale was ordered. Xerxes-Southdale appeals the judgment and the order for judgment and the order denying a new trial and allowing the respondents to amend their complaints after trial to include the waiver issue.

The issues presented are:

(1) Was the pro forma statement nonactionable as a matter of law despite the failure to disclose adverse financial data?

(2) Did the limited partners of Xerxes-Southdale unreasonably rely on the pro forma statement as a matter of law?

(3) Did the limited partnership waive its claim of fraud?

(4) Are attorneys fees allowable costs in an appeal from a mortgage foreclosure judgment?

 1. The trial court in its conclusions of law stated that pro forma statements are estimates of future events and thus nonactionable. As a general proposition, the trial court was correct in stating that a claim based on fraud must have as one of its elements a statement having to do with a past or present fact. *Davis v. Re-Trac Manufacturing Corp.*, 276 Minn. 116, 117, 149 N.W.2d 37, 38 (1967). In *Spiess v. Brandt*, 230 Minn. 246, 41 N.W.2d 561 (1950), however, this court recognized that predictions could be fraudulent if they failed to reflect past or present facts. In

this case, the existence of the 1971 financial statement was a present fact in the possession of the respondents which could have constituted a touchstone against which to test the predictions contained in the pro forma statement. When respondents furnished the 1972 pro forma statement without also disclosing the critical information as to the negative cash flow in 1971, they did more than merely give an estimate of a future event. They made a prediction without revealing a present fact which could have assisted in determining the accuracy of the prediction.

 We hold that it was error for the trial court to declare the pro forma statement nonactionable as a matter of law. Projections should be considered actionable or not in fraud, depending upon whether they accurately reflect surrounding past and present circumstances. In so holding, we observe that we are only reversing the trial court's ruling that the pro forma statement was nonactionable as a matter of law. It may be that failure to disclose the 1971 statement was not in fact fraudulent. More importantly, however, we observe that even if the respondents acted fraudulently, appellant may not be entitled to damages. We adhere to the position that "in jurisdictions [like Minnesota] where the measure of damages in such cases is the difference between the actual value of the property and the price paid * * * if the property is worth what plaintiff gave for it he has suffered no damage and therefore cannot recover;" 37 C.J.S. *Fraud* § 41g (4th ed. 1955), citing *Alden v. Wright*, 47 Minn. 225, 49 N.W. 767 (1891), and "[f]raud without damage * * * will not support one [cause of action] at law for damages." 8A Dunnell Minn. Digest 2d, *Fraud*, § 2.05 (3d ed. 1979). On remand, evidence will have to be received as to the market value of the limited partnership interest, assuming the disclosure of the negative cash flow. It may well be that because of income tax considerations, the evidence will reveal that the selling price equaled the market value of the property.

1. Originally, respondents had commenced a proceedings subsequent. Later the parties stipulated that the respondents could proceed with a mortgage foreclosure action.

2. The trial court ruled that as a matter of law Xerxes-Southdale Office Building Co. unreasonably relied upon the pro forma statement because Mutschler was a sophisticated purchaser who should have known better than to rely on a pro forma statement. We cannot accept this as a conclusion of law. While it is true that the question to be asked when determining reasonable reliance is "not whether the representation would deceive the average man * * * [but rather] whether the representations were * *· * calculated to deceive, not the average man, but a person of the capacity and experience of the particular individual" who received the representations, *Spiess v. Brandt*, 230 Minn. at 254, 41 N.W.2d at 567; 8A Dunnell Minn. Digest 2d, *Fraud*, § 2.04 (3d ed. 1979), the "person" in this case is Xerxes-Southdale Office Building Co. Not only is it incorrect to rule upon the reasonableness of Mutschler's individual reliance as a matter of law, but it is also impossible on this record to attribute whatever sophistication Mutschler may have had to the limited partnership. Absent proof of an agency relationship allowing Mutschler to act on behalf of the partnership, the issue of whether members of the limited partnership unreasonably relied upon a financial statement must be determined as a matter of fact based upon each partner's personal circumstances. Since there is no evidence on the record concerning the reasonableness of the partners' reliance, the court's ruling cannot be sustained.

3. The trial court, relying·upon *United Forest Products Company v. Baxter*, 452 F.2d 11 (8th Cir. 1971), ruled that Mutschler had waived any action in fraud which the partnership may have had. Because *Baxter* involved the application of Iowa law, whatever precedential value *Baxter* may have cannot control over our own decision in *Rosenquist v. Baker*, 227 Minn. 217, 35 N.W.2d 346 (1948). In *Rosenquist*, plaintiff claimed that he had been fraudulently induced to sign a contract. All that remained to do under the contract was to pay about $500 in monthly installments. Plaintiff had made an offer to rescind the contract; defendant had rejected ·the offer. We said:

The rule is that, where a party to a contract has partially performed it before discovering the falsity of the representation which induced him to enter into it, he is not obliged to retrace his steps, but may complete performance without waiving the fraud and then bring an action for damages for deceit.

227 Minn. at 223, 35 N.W.2d at 349.

*Rosenquist* states the law regarding waiver of a claim of fraud where the contract is partially executory. In this case, the contract was partially executory since the mortgage had not been paid off fully by the limited partnership. We did not decide in *Rosenquist* whether the offer to rescind must be made or whether the offer was just incidental proof of nonwaiver. We conclude that the offer to rescind is not necessary to avoid waiving underlying fraud where there exists a partially executory contract. Thus, the partnership has not waived its fraud claim and raised it properly in this action.

4. Because this case must be remanded, we need not now consider whether attorneys fees are allowable costs in an appeal from a mortgage foreclosure judgment.

Neither party shall be allowed costs or disbursements on this appeal.

Reversed and remanded.