# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2102

_____

Meecorp Capital Markets, LLC

*Plaintiff - Appellee*

v.

Timothy J. Oliver

*Defendant - Appellant*

PSC of Two Harbors, LLC; Gandolf Group, LLC,
formerly known as Gandolf Development, LLC,
formerly known as Red Cedar Estates; Christopher
M. Anderson; PSC Funding, LLC; Gandolf Holdings,
LLC, formerly known as Gandolf Group, LLC; Black
Hawk Village Development, LLC; Blue Springs Village
Development, LLC; Brandon Heights Village Development,
LLC; Brandon Heights Village II Development, LLC;
Lakewood Village Development, LLC, formerly known
as Evergreen Heights Development, LLC; Gilcrease
Hills Estates Development, LLC; Green Street Estates
Development, LLC; Orleans Terrace Development, LLC;
Pine Crest Village Development, LLC; River Falls
Ventures, LLC; South Creek Village Development, LLC;
South Glen Village Development, LLC; Woodglen Village
Development, LLC, formerly known as Alta Vista Village
Development, LLC; Black Hawk Village, LP; Blue Springs
Village, LP; Brandon Heights Village, LP; Brandon Heights
Village II, LP; Gilcrease Hills Estates, LP; Lakewood
Village, LP, formerly known as Evergreen Heights, LP;
Mercury Henderson Cottages, LP; Orleans Terrace, LP;

Pine Crest Village, LP; South Creek Village, LP; South Glen Village, LP; and Woodglen Village, LP

*Defendant*s

SunAmerica Housing Fund 1270;
SunAmerica Housing Fund 1306;
SunAmerica Housing Fund 1307;
and SunAmerica Housing Fund 1346

*Intervenor*s

_____

No. 12-2169

_____

Meecorp Capital Markets, LLC

*Plaintiff - Appellee*

v.

PSC Funding, LLC

*Defendant - Appellant*

Timothy J. Oliver; PSC of Two Harbors, LLC; Gandolf Group, LLC, formerly known as Gandolf Development, LLC, formerly known as Red Cedar Estates; Christopher M. Anderson; Gandolf Holdings, LLC, formerly known as Gandolf Group, LLC; Black Hawk Village Development, LLC; Blue Springs Village Development, LLC; Brandon Heights Village Development, LLC; Brandon Heights Village II Development, LLC; Lakewood Village Development, LLC, formerly known as Evergreen Heights Development, LLC; Gilcrease Hills Estates Development, LLC; Green

-2-

Street Estates Development, LLC; Orleans Terrace
Development, LLC; Pine Crest Village Development, LLC;
River Falls Ventures, LLC; South Creek Village Development,
LLC; South Glen Village Development, LLC; Woodglen Village
Development, LLC, formerly known as Alta Vista Village
Development, LLC; Black Hawk Village, LP; Blue Springs
Village, LP; Brandon Heights Village, LP; Brandon Heights
Village II, LP; Gilcrease Hills Estates, LP; Lakewood Village,
LP, formerly known as Evergreen Heights, LP; Mercury
Henderson Cottages, LP; Orleans Terrace, LP; Pine
Crest Village, LP; South Creek Village, LP; South Glen
Village, LP; and Woodglen Village, LP

*Defendant*s

SunAmerica Housing Fund 1270;
SunAmerica Housing Fund 1306;
SunAmerica Housing Fund 1307;
and SunAmerica Housing Fund 1346

*Intervenor*s

————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

————————

Submitted: October 6, 2014
Filed: January 13, 2015

————————

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

————————

GRUENDER, Circuit Judge.

-3-

After a bench trial, the district court[1] found Timothy Oliver and PSC Funding, LLC, liable to Meecorp Capital Markets, LLC, for fraud. Oliver and PSC Funding now appeal. We affirm.

I.

Oliver was the chief manager and part-owner of PSC Funding. In 2004, Oliver and PSC Funding applied to Meecorp Capital Markets ("Meecorp") for a $1 million loan to refinance property located on the north shore of Lake Superior in Minnesota. Meecorp made a preliminary commitment to provide the loan in December 2004. After conducting an appraisal of the property, Meecorp informed Oliver and PSC Funding that Meecorp would not make the loan unless the borrowers pledged collateral in addition to the north-shore property. In response, Oliver provided Meecorp with a list of fourteen other income-producing properties and associated "Oliver values," valuations of Oliver's interest in each.[2] The list represented an offer of Oliver's interests as additional collateral. The sum of the "Oliver values" on the list was more than $1 million. Gandolf Group ("Gandolf"), a real-estate development company owned by Oliver and PSC Funding, also supplied information to Meecorp regarding the fourteen properties, including cash-flow projections and the value of Oliver's interests. Meecorp used this information to independently analyze the value of the pledged collateral—Oliver's interests in the fourteen properties—and to determine the amount of loan principal the collateral would support. Ultimately, Meecorp made a new loan offer for $1.32 million.

---

[1]The Honorable Donovan W. Frank, United States District Court for the District of Minnesota.

[2]These valuations reflected the calculated present value of Oliver's alleged interests in the companies associated with the fourteen properties, including his share of the profits.

Before closing, Meecorp requested additional information from Oliver about the fourteen properties. In response, Gandolf supplied member-control agreements, certificates of good standing, and Schedule K-1s for several limited-liability companies owned by Gandolf and associated with each property ("Gandolf's LLCs"). Gandolf, however, did not supply the deeds of ownership for the properties. After reviewing the provided materials, Meecorp concluded that Oliver, as an individual, could not pledge collateral of sufficient value to secure the $1.32 million loan because he held no direct interest in the properties. Instead, Meecorp believed that Gandolf's LLCs actually owned nearly all the properties on Oliver's list and that Oliver held only governance rights—not financial rights—in Gandolf's LLCs.[3] Meecorp therefore requested that Gandolf, as the owner of the remaining governance rights and the 100% owner of the financial rights in Gandolf's LLCs, pledge as additional collateral its interests in the LLCs. Meecorp's attorney and managing director testified that they believed Gandolf's pledge, along with Oliver's initial pledge, would make the loan "safe" because it would provide Meecorp with an enforceable pledge of 100% of the membership interests in a sufficient number of property-owning LLCs to secure the loan. The parties agreed which interests Gandolf would pledge, and Oliver, acting as Gandolf's representative, signed the pledge agreement. Meecorp subsequently delivered the promised funds to PSC of Two Harbors, a single-asset entity created for the project by Oliver and PSC Funding.

Oliver and PSC Funding defaulted on repayment of the loan, and Meecorp was unable to recover any of the loan principal. During the subsequent legal proceedings, Meecorp learned that neither Oliver nor Gandolf's LLCs owned the properties pledged as collateral. Instead, Gandolf's LLCs were merely general partners in undisclosed limited partnerships that owned and managed each property. Outside

---

[3]Here, as in Gandolf's LLC's organizational documents, the term "financial rights" refers to a member's right to share in net income, net losses, and distributions. "Governance rights" refers to a member's rights other than financial rights. Together, these rights and interests constitute "membership interests."

limited partners, not revealed to Meecorp during loan negotiations, owned up to 99.99% of the equity interests[4] in the properties pledged. Gandolf's LLCs were able to claim only approximately 0.01%. Thus, Gandolf owned only a very limited equity interest in the partnerships. Moreover, the limited-partnership organizational documents prohibited the general partners—Gandolf's LLCs—from pledging their economic interests without the limited partners' prior consent. Because the limited partners for each property did not consent to the pledges, Meecorp could not acquire even the small share of equity interest owned by Gandolf's LLCs.

In August 2009, Meecorp sued Oliver, PSC Funding, Gandolf, and several other entities involved in the transaction. The district court granted summary judgment to Meecorp on its breach-of-the-note claim against PSC of Two Harbors and its breach-of-the-guaranty claim against Oliver, awarding Meecorp $2,366,191.88—the amount of principal, fees, and interest due. The remaining claims proceeded to a bench trial. The court entered judgment against Gandolf on a breach-of-the-guaranty claim and against Gandolf, Oliver, and PSC Funding on a fraud claim. Oliver and PSC Funding now appeal the fraud judgment.

II.

The substantive law of Minnesota applies in this diversity case. *Gen. Elec. Capital Corp. v. Union Planters Bank, N.A.*, 409 F.3d 1049, 1053 (8th Cir. 2005). Under Minnesota law, a plaintiff must prove five elements to succeed in a fraud action: (1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce action

---

[4]We use the term "equity interest" here to refer to a partner's percentage interest in the partnership assets and capital and its share of the profits, losses, and credits generated by each property. The term "economic interest" refers to the same rights.

in reliance thereon; (4) the representation proximately caused action in reliance thereon; and (5) pecuniary damages as a result of the reliance. *U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011); *Vandeputte v. Soderholm*, 216 N.W.2d 144, 146 (Minn. 1974). "Fraud may also be established by concealment of the truth." *Cold Spring Granite Co.*, 802 N.W.2d at 373.

Oliver and PSC Funding raise five challenges to the district court's judgment on the fraud claim. Specifically, they contend: (1) the list of "Oliver values" did not contain actionable misrepresentations; (2) the evidence was not sufficient to establish that Meecorp relied on any misrepresentations about Oliver's and Gandolf's interests in the properties; (3) the evidence was not sufficient to establish scienter; (4) the evidence was not sufficient to establish proximate causation; and (5) the evidence was not sufficient to establish fraud damages. "In an 'appeal from a civil bench trial, we review the trial court's findings of fact for clear error. Its conclusions of law are subject to de novo review. Mixed questions of law and fact that require the consideration of legal concepts . . . are also reviewed de novo.'"[5] *Darst-Webbe Tenant Ass'n Bd. v. St. Louis Hous. Auth.*, 339 F.3d 702, 710-11 (8th Cir. 2003) (quoting *Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.*, 48 F.3d 365, 369 (8th Cir. 1995)).

---

[5]Though this court has looked to state law on some occasions and federal law on other occasions to supply the standard of review in an appeal from a bench trial in a diversity action, *see, e.g.*, *BLB Aviation S.C., LLC v. Jet Linx Aviation, LLC*, 748 F.3d 829, 835-36 & n.2 (8th Cir. 2014) (collecting cases), we apply the federal standard of review here because both parties agree it governs. *See Access Telecomm. v. Sw. Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir.1998) (applying standard of review that both parties argued "[w]ithout deciding the standard-of-review question, which is best left to be resolved in a case in which it is contested").

A.

Oliver and PSC Funding first argue that the district court erred by finding that the list of "Oliver values" contained actionable misrepresentations because the Minnesota Supreme Court has held that "a statement of opinion as to future value does not generally give rise to an action for fraud." *Midland Nat'l Bank of Minneapolis v. Perranoski*, 299 N.W.2d 404, 412 (Minn. 1980). Whether the list of "Oliver values" may serve as the basis for a fraud claim is a question of law. *See Berg v. Xerxes-Southdale Office Bldg. Co.*, 290 N.W.2d 612, 615 (Minn. 1980). We review the district court's finding *de novo*. *Darst-Webbe Tenant Ass'n Bd.*, 339 F.3d at 710-11.

By raising this challenge to the district court's judgment, Oliver and PSC Funding miss the point. The district court found that the list of values provided by Oliver was actionable in fraud not because the underlying projections contained inaccurate financial predictions but rather because the list represented that Oliver owned interests of significant value that he could pledge as collateral to secure the loan. The predictive nature of the values and the accuracy of those predictions thus played no role in the district court's judgment. Moreover, the defendants misconstrue Minnesota law when they assert that any statements of value based on projections cannot give rise to a fraud claim. The Minnesota courts have not extended blanket immunity to all economic projections. *See Berg*, 290 N.W.2d at 615 (holding that a pro forma statement—in that case, a projection of cash flow—could be actionable "depending upon whether [it] accurately reflect[s] surrounding past and present circumstances"). If the relevant projection "fail[s] to reflect past or present facts," it may serve as a valid basis for a fraud claim. *Id.* (citing *Spiess v. Brandt*, 41 N.W.2d 561, 565 (Minn. 1950)). Significant to the inquiry is whether a party "ma[kes] a prediction without revealing a present fact which could have assisted [the recipient] in determining the accuracy of the prediction." *Berg*, 290 N.W.2d at 615.

-8-

Here, Oliver provided valuations of his interests in the properties in response to Meecorp's request for additional collateral. By providing these figures, Oliver represented that he held sizable financial interests in the properties that he could pledge to secure the loan. Though Meecorp eventually realized that Oliver, as an individual, only held governance rights in Gandolf's LLCs, Meecorp made the loan only after Oliver and Gandolf led it to believe that together they owned and could pledge 100% of the membership interests in the LLCs that allegedly owned the properties. At no point prior to closing did Oliver or PSC Funding inform Meecorp about the existence of the limited partnerships that actually owned the properties incorporated as collateral or the limited partners that held up to 99.99% of the equity rights. Oliver and PSC Funding thus failed to reveal critical present facts that would have enabled Meecorp to evaluate fully the list of values Oliver, and later Gandolf, provided. These circumstances rendered the list of values "more than merely . . . estimate[s] of a future event." *Id.*; *see also Richfield Bank & Trust Co. v. Sjogren*, 244 N.W.2d 648, 650 (Minn. 1976) (stating that a party to a transaction has a duty to disclose information to prevent his words from misleading the other party). Instead, the list of values contained misrepresentations as to ownership and the ability to pledge equity interests in the property-owning entities. Accordingly, we agree with the district court's finding that Oliver's list of values was actionable in fraud.

B.

Oliver and PSC Funding next argue that the evidence was insufficient to support the district court's conclusion that Meecorp relied on Oliver's misrepresentations when making the loan. *See U.S. Bank N.A.*, 802 N.W.2d at 373 (listing reliance as an element of common-law fraud). This is a factual finding, *see Lowrie v. Christenson*, 206 N.W. 390, 390 (Minn. 1925), which we review for clear error, *Darst-Webbe Tenant Ass'n Bd.*, 339 F.3d at 710-11.

Oliver and PSC Funding contend that the evidence was insufficient to establish that Meecorp relied on Oliver's misrepresentations because Meecorp knew prior to closing that Oliver did not own directly any of the properties. The defendants once again mischaracterize the district court's holding. The district court's reliance finding did not turn on Oliver's initial assertions of ownership alone. Instead, the court found Oliver and PSC Funding liable for fraud because the defendants misrepresented that *together* they owned and could pledge all governance and financial interests in a sufficient number of property-owning entities to make the loan "safe." Because of this misrepresentation, Meecorp believed that Oliver's and Gandolf's respective pledges together constituted a valid and enforceable pledge of significant value. Only after receiving these pledges did Meecorp fund the loan. We agree that these facts sufficiently established reliance, and we reject the appellants' argument that the court clearly erred on this basis.

Oliver and PSC Funding's second reliance argument is similarly unavailing. Oliver and PSC Funding contend that Meecorp could not have acted in reliance on the misrepresentations because Meecorp independently evaluated the value of Oliver's and Gandolf's interests before making the loan. *See Spiess*, 41 N.W.2d at 566 (stating as a general rule that the recipient of a fraudulent misrepresentation is not justified in relying upon its truth if its falsity is "obvious" to the recipient). We disagree. Though Meecorp's managing director, Michael Edrei, testified that Meecorp performed an independent evaluation, this evaluation relied on misrepresentations provided by Oliver and Gandolf about which entities owned the properties and could pledge economic interest as collateral. Oliver and PSC Funding did not provide Meecorp with information about each property-owning limited partnership, deeds of property ownership, or the partnership pledging restrictions from which Meecorp might have been able to determine that Oliver and Gandolf could not pledge anything of significant value related to the properties. *See Richfield Bank*, 244 N.W.2d at 650 (stating that a party to a transaction has a duty to disclose information to prevent his words from misleading the other party). Thus, the

-10-

independent evaluation could not and did not incorporate these facts. *See Spiess*, 41 N.W.2d at 567 ("We have repeatedly held that one who deceives another to his prejudice ought not to be heard to say in defense that the other party was negligent in taking him at his word."). In light of these circumstances, the falsity of the representation was not obvious to Meecorp. *Cf. id.* at 566 (finding defendants liable for fraud where they withheld the only practical source of pertinent information and thwarted plaintiffs' efforts to investigate). We thus find no clear error in the district court's determination that Meecorp acted in reliance on the defendants' misrepresentations when making the loan.

C.

Third, Oliver and PSC Funding argue that the evidence was insufficient to establish scienter because Oliver testified that he never provided Meecorp information that he knew to be false or that was intended to mislead. The existence of scienter is a question of fact. *See Hodge v. Franklin Ins. Co. of Phila.*, 126 N.W. 1098, 1099 (Minn. 1910). We review the district court's finding for clear error. *Darst-Webbe Tenant Ass'n Bd.*, 339 F.3d at 710-11.

Oliver's professed innocent intent does not preclude a fraud finding. After all, "a claim to an honest belief . . . is not automatic protection from liability in fraud, if that claim is, under the circumstances, completely improbable." *Florenzano v. Olson*, 387 N.W.2d 168, 174 (Minn. 1986). Oliver maintains that he did not intend to defraud; instead, he asserts that Meecorp should have known that he intended to pledge only his governance interests in Gandolf's LLCs and that Gandolf's pledge would not provide Meecorp with any additional rights in the properties. However, Oliver's claim of honest belief conflicts with evidence demonstrating its improbability. The evidence at trial showed: (1) Oliver, in response to Meecorp's request for additional collateral, represented that he owned interests worth more than $1 million in fourteen properties; (2) after Meecorp learned that Oliver held only

-11-

governance rights in the LLCs that allegedly owned the properties, Meecorp expressed concern about making the loan; (3) Oliver, to satisfy Meecorp's concerns and induce Meecorp to make the loan, signed a document listing Gandolf as a pledgor; (4) Oliver had signed many of the relevant limited-partnership agreements, which explicitly limited Gandolf LLCs' (and therefore Gandolf's) financial rights in the properties incorporated as collateral to approximately 0.01% and also contained prohibitions against pledging even this limited interest; and (5) before closing, Oliver never provided information to Meecorp about the limited partnerships that owned the properties incorporated into the loan agreement as collateral and that held up to 99.99% of the equity rights therein. Based on this evidence, the district court reasonably could have found Oliver's claim of honest belief to be improbable. We find that evidence was sufficient to establish scienter.

D.

Fourth, Oliver and PSC Funding argue that Meecorp failed to produce sufficient evidence to show that the misrepresentations were the proximate cause of any damage to Meecorp. *See Vandeputte,* 216 N.W.2d at 146 (noting that, in fraud claims, the false representation must be the proximate cause of the injury). Oliver and PSC Funding allege that Meecorp's losses instead resulted from Meecorp's flawed independent evaluation. Whether the evidence establishes proximate cause is a question of fact, *Barr/Nelson, Inc. v. Tonto's, Inc.*, 336 N.W.2d 46, 51 (Minn. 1983), and we review the district court's finding for clear error, *Darst-Webbe Tenant Ass'n Bd.*, 339 F.3d at 710-11.

In *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520 (Minn. 1986), the Minnesota Supreme Court explained the proximate-cause relationship required between fraudulent conduct and damages in fraud cases: "In general . . . courts have restricted recovery to those losses which might be expected to follow from the fraud and from events that are reasonably foreseeable." *Id.* at 537-38 (quoting W. Keeton,

et al., *Prosser and Keeton on the Law of Torts* § 110, at 767 (5th ed. 1984)).  Here, the district court did not clearly err in finding that Oliver's and PSC Funding's misrepresentations proximately caused Meecorp's damages.  First, the evidence showed that Meecorp suffered a loss—the inability to realize on the pledged collateral following the loan default.  Second, the evidence revealed that this loss was the type of injury that would be expected to follow from Oliver's and PSC Funding's misrepresentations regarding their ability to pledge an equity interest in the property-owning entities.  There is no dispute that Meecorp initially refused to make the loan due to insufficient collateral.  Only after Meecorp received the pledges from Oliver and Gandolf—pledges the defendants led it to believe constituted an enforceable pledge of 100% of the membership interests in entities that owned the properties—did it feel "safe" and agree to provide funds for the north-shore project.  Oliver and PSC Funding never revealed that limited partnerships actually owned the properties incorporated as collateral and up to 99.99% of the financial rights therein, nor did they disclose the restrictions that prevented Gandolf from pledging even its limited equity interests.  As a result, Meecorp made the loan, and, following the defendants' default, Meecorp could not realize on the collateral.  In light of these facts, the injury was foreseeable, and Meecorp's independent evaluation, which relied upon Oliver and PSC Funding's misrepresentations, did not sever the causal chain.  The district court thus did not commit clear error in finding the facts sufficient to establish proximate cause.

E.

Finally, Oliver and PSC Funding argue that Meecorp did not produce any evidence of fraud damages and that the district court erred when it found that Meecorp proved this element of its fraud claim.  We review for clear error.  *Vilett v. Moler*, 84 N.W. 452, 453-54 (Minn. 1900) (noting that the amount of damages sustained by a plaintiff as a result of the fraud is a question of fact).  *See also Darst-Webbe Tenant Ass'n Bd.*, 339 F.3d at 710-11 (stating that issues of fact are reviewed

-13-

for clear error).  Contrary to Oliver and PSC Funding's assertion, the evidence established that: (1) Meecorp gave Oliver and PSC Funding's single-asset entity a loan for $1.32 million, (2) the defendants defaulted, and (3) Meecorp was unable to realize on the pledged collateral due to the defendants' misrepresentations as to ownership and ability to pledge equity interest in the property-owning entities. Under Minnesota law, this evidence is sufficient to establish fraud damages. *See Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc*., 61 F.3d 639, 647 (8th Cir. 1995) (collecting cases showing that Minnesota uses the "out-of-pocket" loss rule for damage compensation in cases of fraud).  The district court thus did not commit clear error in finding that Meecorp proved the damages element of its fraud claim.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____