# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 02-1777

| | | |
|---|---|---|
| Darst-Webbe Tenant Association Board, a Missouri non-profit corporation; Housing Comes First, a Missouri non-profit corporation; Peabody Tenant Association, a Missouri non-profit corporation, | * * * * * * * * | |
| Plaintiffs - Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri |
| St. Louis Housing Authority, a Municipal corporation; Cheryl A. Lovell, in her official capacity as Director of the St. Louis Housing Authority; United States Department of Housing and Urban Development; Mel Martinez, in his official capacity as Secretary of United States Department of Housing and Urban Development. | * * * * * * * * * * * * | |
| | * | |
| Defendants - Appellees. | * | |

Submitted:  November 4, 2002

Filed:  August 8, 2003

Before McMILLIAN and MELLOY, Circuit Judges, and LONGSTAFF,[1] District
Judge.

_____

MELLOY, Circuit Judge.

Appellants, Darst-Webbe Tenant Association Board, Peabody Tenant
Association, and Housing Comes First, Inc., brought this action against the United
States Department of Housing and Urban Development ("HUD") and the St. Louis
Housing Authority ("SLHA"). This suit was intended to address grievances arising
out of the implementation of revitalization plans for the Darst-Webbe and Clinton
Peabody public housing complexes in St. Louis, Missouri.

This was a very complicated case that involved a total of nineteen counts, all
of which were maintained throughout the proceedings in the district court. The
district court resolved one count in favor of HUD after a motion for summary
judgment. We affirm that decision.

The district court then held a six-day bench trial to consider the remaining
eighteen counts. After the trial, the court decided two counts in favor of the
appellants and enjoined the appellees from spending HOPE VI funds on the Clinton
Peabody housing complex. The appellees have not appealed the district court's
decision on these two counts.

The district court ruled in favor of the appellees, HUD & SLHA, on the
remaining sixteen counts. The appellants have appealed the district court's decision
on eight of those counts. We affirm the district court's decision on two of those
counts and remand the remaining six counts for further findings by the district court.

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the
Southern District of Iowa, sitting by designation.

## I. Overview

This case involved three appellants. Darst-Webbe Tenant Association Board and Peabody Tenant Association are housing associations. The third appellant Housing Comes First, Inc. is a Missouri non-profit corporation that engages in activities designed to help the homeless and encourage affordable housing. For the purpose of this appeal, we will not determine which appellant would be entitled to any relief that the district court could order on remand. Instead, we leave that determination to the district court if it determines that the appellants have prevailed on any of the remaining six counts.

Appellee, SLHA, is a Missouri non-profit corporation, and a public housing agency. See 42 U.S.C. § 1437a(b)(6) ("The term 'public housing agency' means any State, county, municipality, or other governmental entity or public body (or agency or instrumentality thereof) which is authorized to engage in or assist in the development or operation of low-income housing."). Appellee, HUD, is the federal agency responsible for the administration and enforcement of various government programs designed to promote housing opportunities in the United States. The complaint specifically addressed each count against either the "Housing Authority Defendants" (SLHA) or the "Federal Defendants" (HUD) and we will consider these counts in that same manner.

In 1995, the SLHA applied for and received a $46.7 million HOPE VI grant to revitalize the Darst-Webbe, Webbe Elderly and Paul Simon Elderly public housing complexes in St. Louis, Missouri.[2] The revitalization plan involved demolishing all existing units at the housing complex, and replacing them with a mixed-income housing community. The SLHA did not proceed with the revitalization as promised in the grant application. As a result, HUD placed the SLHA in default of its 1995

---

[2]This appeal does not concern the Webbe Elderly and Paul Simon Elderly portions of the revitalization plan.

HOPE VI grant. The SLHA cured this default by developing a new revitalization plan in 1998. Like the 1995 plan, the 1998 revitalization plan provided for the demolition of the Darst-Webbe public housing complex. It also proposed the selective demolition of units at the Clinton Peabody public housing complex. The City of St. Louis also applied for and received a $20 million Section 108 loan guarantee for infrastructure improvements necessary to support the revitalization plan.[3] HUD approved the SLHA's new revitalization plan in April of 1998 and the City's Section 108 loan guarantee in June of 2000.

The portion of the new revitalization plan addressing the Clinton Peabody public housing complex was enjoined by the district court "until such time that [HUD] *might* determine that the Clinton Peabody development qualifies as 'severely distressed public housing'. . ." Darst-Webbe Tenant Ass'n Bd., et. al. v. St. Louis Hous. Auth., et. al., Mem. Op. at 20 (E.D. Mo. Dec. 14, 2001) (emphasis in original). This portion of the district court's decision has not been appealed.[4]

The Darst-Webbe complex originally contained approximately 750 units. When the 1995 revitalization plan was submitted only approximately 220 of these units were occupied. At this time, all the original units have been demolished and the former Darst-Webbe tenants have been relocated. Under the 1998 revitalization plan, the SLHA plans to replace the demolished low-income housing units with a mixed income community.

---

[3]The City of St. Louis also sought Section 108 loan guarantees for other projects. These additional loan guarantees are not the subject of this appeal.

[4]HUD recently determined that at least a portion of the Clinton Peabody development qualifies as "severely distressed public housing." This determination and the plans for revitalizing Clinton Peabody are not the subject of this appeal.

The community will be composed of three types of rental units: low-income public housing, low-income tax credit, and market rate rental units. The income criteria for individuals living in these units can generally be described in the following manner. Low-income public housing units are designated for individuals with incomes below 80% of the median area income. The rent for these units is 30% of the tenant's family income. The low-income tax credit units are designated for individuals with incomes below 60% of the median area income, but the rent for these units is set at 30% of the median <u>area</u> income, instead of the <u>tenant's</u> family income. The market rate rental units will be rented at prevailing market rates and do not have an income threshold for the tenants living in them. In addition to rental units, the plan also calls for the construction of "for-sale" units.

Appellants request that more public housing units be built at the Darst-Webbe complex.[5] Currently, the SLHA plans to build approximately 300 rental units (not including units designated for the elderly), of which 80 would be low-income public housing units, 82 low-income tax credit units, and 138 market rate units. Appellants request that an additional 120 low-income public housing units be built. In addition, appellants want more of the low-income public housing units to be built for larger families.

The crucial question in this case and on appeal is whether appellants have a legal basis for the relief they request. Appellants argue that the appellees have not complied with the requirements of two federal programs and are acting in violation of federal statutes designed to prevent discrimination in public housing. The two programs at the heart of this dispute are the HOPE VI program and Section 108 loan guarantees. Congress created the Homeownership & Opportunity for People Everywhere ("HOPE") program to provide grants "to carry out an urban revitalization demonstration program involving major reconstruction of severely distressed or

---

[5]As noted earlier, the revitalization plan and the number of units being constructed at the Clinton Peabody project are not the subject of this appeal.

obsolete public housing projects, to be administered by local public housing agencies." Pub. L. No. 102-389, 106 Stat 1571 (1992). The HOPE program is part of the United States Housing Act, 42 U.S.C. § 1437, et. seq. The appellants are challenging the process involved in making, approving, and implementing the HOPE VI grant received by the SLHA.

The appellants also challenge a Section 108 loan guarantee awarded to the City of St. Louis. The Housing and Community Development Act of 1974 created the Community Development Block Grant program. See 42 U.S.C. § 5301 et seq. As part of the Community Development Block Grant program, Congress authorized HUD to make Section 108 loan guarantees to local governments. 42 U.S.C. § 5308. These loan guarantees were authorized for a variety of purposes related to, inter alia, the rehabilitation of housing developments. See 42 U.S.C. § 5308(a). In this case, the City of St. Louis (a distinct and separate entity from the SLHA) applied for a Section 108 loan guarantee to support ancillary projects related to the SLHA's revitalization plans. These projects were primarily targeted at improving the infrastructure surrounding the developments, e.g. building new streets and sidewalks. The appellants are challenging HUD's approval of this loan guarantee because they claim the City obtained it through making inaccurate certifications.

Also at issue in this case are federal statutes designed to remedy and prevent discrimination in the provision of public housing. Congress required HUD, and the Secretary of Housing and Urban Development, to affirmatively further fair housing in implementing programs for which it was responsible. 42 U.S.C. § 3608(e) ("The Secretary of Housing and Urban Development shall . . . (5) administer the programs and activities relating to housing and urban development in a manner affirmatively to further the policies of this subchapter [including the duty to achieve equal housing opportunities]"). Congress also prohibited discrimination on the basis of "race, color, religion, sex, familial status, or national origin" in the sale or rental of a dwelling. 42 U.S.C. § 3604(a) & (b).

6

The appellants argue that the district court committed three over-arching errors in resolving this dispute. They claim that the district court erred as a matter of law in granting HUD's motion for summary judgment on Count XIV, which requested the court to set aside HUD's approval of the Section 108 loan guarantee to the City of St. Louis. The second and third alleged errors concern the district court's ruling after the bench trial. The appellants claim that the district court abused its discretion by failing to comply with Federal Rule of Civil Procedure 54(c), which requires a district court, in a non-default case, to consider any relief requested even if it was not requested in the pleadings. The appellants also argue that the district court abused its discretion by failing to make adequate findings of fact and conclusions of law, as required by Federal Rule of Civil Procedure 52(a).

On appeal the appellants have, for the first time in this litigation, narrowed the counts upon which they seek relief. Specifically, they appeal the district court's decision on only eight of the eighteen counts decided after a bench trial on the merits. On these counts, appellants argue that the district court failed to make sufficient findings of fact and conclusions of law. The first three counts allege that the SLHA discriminated on the basis of race (Count I), sex (Count II), and familial status (Count III). Appellants also argue that the SLHA is conducting its revitalization efforts in violation of the HOPE VI program's requirements (Counts VI & VIII). Finally, appellants contend that the district court erred in determining that HUD fulfilled its duty to affirmatively further fair housing and did not violate the Administrative Procedures Act, 5 U.S.C. § 706(2)(A), (C), and (D) when it approved the Section 108 loan guarantee and the HOPE VI plan without properly considering the impact these programs would have on fair housing (Counts XIII, XVII, & XVIII ).

Again we note that this is a very complicated case, made even more difficult by the parties' failure to narrow the issues and specifically address each other's arguments. After reading the pleadings, briefs and documents in this case, it is clear that the district court faced a monumental task in resolving this dispute. However,

7

we are constrained by F.R.C.P. 52(a) to remand this case to the district court for a more detailed explanation of how it reached its decision on Counts I, II, III, XIII, XVII, & XVIII.

We affirm the district court's decisions on all other counts. In particular, we hold that the district court properly granted the summary judgment motion in favor of HUD on Count XIV. We also hold that the manner in which the district court handled the relief requested by the appellants does not constitute reversible error. Finally, we hold the district court did not abuse its discretion by ruling in favor of the SLHA on Counts VI & VIII, regarding compliance with the HOPE VI program's requirements**.**

## II. Motion for Summary Judgment

The district court treated appellants' motion for summary judgment on Count XIV as a cross-motion for summary judgment. This count challenged HUD's approval of the City of St. Louis's ("City's") application for a Section 108 loan and requested that the district court set aside this approval under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), (C), and (D). The district court upheld HUD's approval of the City's application and granted HUD's motion for summary judgment.

The City of St. Louis applied for a Section 108 loan guarantee to assist with ancillary projects related to the SLHA's revitalization efforts. These projects included improving the infrastructure at the housing complexes, e.g., adding new streets, utilities, sidewalks and green spaces, and demolishing and redeveloping an abandoned city hospital. In applying for this loan guarantee, the City was required to make several certifications to HUD.

Appellants argue that HUD should have investigated the assurances made in these certifications and determined whether the City's certifications were accurate. Appellants claim two specific certifications were inaccurate at the time they were made. The first was that the City had in place a Residential Antidisplacement and Relocation Assistance Plan (RARAP) when it applied for the loan guarantee. See 42 U.S.C. § 5304(d); 24 C.F.R. § 42.325. The second certification involved the City's assurance that it would comply with the requirements governing displacement, relocation and the replacement of low and moderate income housing. See 24 C.F.R. § 570.704(e).

We agree with the district court that HUD did not act arbitrarily and capriciously in accepting the City's certifications. We also agree with the district court that to the extent appellants seek to compel the City to comply with these certifications, the proper party to sue would have been the City, not HUD. Both sides have argued about whether these replacement requirements are even applicable in this case. Like the district court, we believe this case can be resolved without deciding the applicability of these requirements to a HOPE VI project. Even assuming that a one-for-one replacement obligation is required, we hold that appellants have failed to demonstrate that the evidence presented creates an issue sufficient to create a jury question that HUD acted inappropriately in approving the City's Section 108 application.

We review a district court's decision to grant summary judgment de novo. Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 600 (8th Cir. 2003). In doing so we view "the record in a light most favorable to the non-moving party and [give] the non-moving party the benefit of all reasonable inferences supported by the record." Id. "Summary judgment is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." Gentry v. Georgia-Pacific Corp., 250 F.3d 646, 649-50 (8th Cir. 2001) (internal citations omitted).

9

Under the APA, a court can set aside an agency's action for several reasons. These include if the court determines that the agency's actions were:

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or]

(D) without observance of procedure required by law

5 U.S.C. § 706(2).

We disagree with the appellants' argument that HUD acted inappropriately in approving the City's Section 108 loan application. We decline to reverse the district court's decision refusing to set aside this loan application under the APA. As an initial matter, we note that the federal regulations state that "HUD will normally accept the certifications submitted with the application." 24 C.F.R. § 570.704(c)(1). Given this procedure, there are several reasons why HUD did not act arbitrarily and capriciously in accepting the City's certifications. First, nothing in the record indicates that the City had a history of providing inadequate certifications or failing to comply with promises made to HUD. Secondly, the certifications were not contested by an outside party at the time they were made. Finally, at least one of these certifications was forward looking, something that would make it very difficult, if not impossible, for HUD to determine if the certification was accurate when made.

To the extent appellants are requesting this court require HUD to force the City to comply with these certifications, the appellants have brought this case against the wrong party. We disagree with the appellants that the Supreme Court's decision in Wilder v. Virginia Hospital Association, 496 U.S. 498 (1990), can be read to require HUD to enforce compliance with the certifications made to it by the City. The Court in Wilder addressed only whether a State can be compelled to submit accurate assurances and findings to the Secretary of Health and Human Services as required

10

by the Medicaid Act. Id. at 513-14. The issue before the Court in Wilder was not whether the Secretary was required to review these assurances or was required to enforce compliance with them. We decline to interpret the Court's holding in Wilder to create such a requirement. Thus, to the extent appellants feel that the City is not complying with certifications it made to HUD, the proper party to seek relief against would be the City, not HUD.

We hold that HUD did not act arbitrarily and capriciously in approving the City's certifications. We also hold that HUD cannot be forced to require the City to comply with the certifications it made. Therefore, we affirm the district court's grant of summary judgment in favor of HUD on Count XIV

### III. Bench Trial

After granting the motion for summary judgment on Count XIV in favor of HUD, the district court held a six-day bench trial on the remaining claims. The appellants maintained all eighteen counts during the bench trial. The district court resolved two of these counts, VII and XIX, in favor of the appellants. Neither the decision nor the relief granted by the district court on these counts has been appealed by either party. Appellants have also chosen not to appeal the district court's decision on eight other counts: IV, V, IX, X, XI, XII, XV, & XVI. As such, appellants and appellees have waived their rights to appeal the district court's decision on ten of their original eighteen counts.

We will review only the district court's decision on the eight counts that the appellants have appealed, all of which were decided in favor of the appellees. These counts can be grouped into three categories: the discrimination counts alleging the SLHA discriminated on the basis or race, sex, & familial status (Counts I, II, & III); the three counts alleging that HUD is not complying with its obligations to affirmatively further fair housing (Counts XIII, XVII, & XVIII); and finally, the two

11

counts alleging the SLHA is not complying with the requirements of the HOPE VI program (Counts VI & VIII).

Appellants argue that we should reverse the district court's ruling on these eight claims because of two errors made by the district court. First, appellants contend that the district court failed to consider any relief requested beyond that stated in the pleadings in violation of F.R.C.P. 54(c). Appellants also argue that the district court failed to make specific findings of fact and conclusions of law on all eight counts, as required by F.R.C.P. 52(a).

## A. Standard of Review

In an "appeal from a civil bench trial, we review the trial court's findings of fact for clear error. Its conclusions of law are subject to de novo review. Mixed questions of law and fact that require the consideration of legal concepts and the exercise of judgment about the values underlying legal principles are also reviewed de novo." Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Insur. Co., et al., 48 F.3d 365, 369 (8th Cir. 1995). A district court's consideration of the relief available is reviewed for abuse of discretion. Shen v. Leo A. Daly Co., 222 F.3d 472, 478 (8th Cir. 2000). The parties agree that the district court's failure to make specific findings of fact, as required by F.R.C.P. 52(a), is reviewed for an abuse of discretion. Medtronic, Inc. v. Daig Corp., 789 F.2d 903, 906 (Fed. Cir. 1986).

## B. Federal Rule of Civil Procedure 54(c)

Federal Rule of Civil Procedure 54(c) requires that, in non-default cases, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." (emphasis added). Appellants argue that the district court failed to consider all the relief they requested. The district court stated that "[t]he Court can

only consider the prayer in the Complaint, and therefore, any additional requests for relief made during argument will not be addressed." Mem. Op. at 11. This statement contradicts the explicit requirements of F.R.C.P. 54(c). However, it does not necessitate remanding all the counts appellants have appealed. The failure to address all relief requested would at most constitute harmless error on those counts where appellants did not prevail. "[W]hile a meritorious claim will not be rejected for want of a prayer for appropriate relief, a claim lacking substantive merit obviously should be rejected." Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60, 66 (1978). Therefore, we decline to remand any claims on which appellants have not prevailed because of an error made by the district court in applying F.R.C.P. 54(c).

We also note that the district court may have actually considered all relief requested and simply characterized that relief incorrectly. The court could have determined that any relief requested during the trial was also requested in the pleadings. Indeed, the appellants seem to suggest that this was the case: "the relief outlined at closing arguments was not different from or broader than what was prayed for in the pleadings. Instead, Plaintiffs quantified and particularized the relief sought in their pleading." Brief of Appellants at 25.

On the counts we are remanding for further findings of fact and conclusions of law, Counts I, II, III, XIII, XVII, and XVIII, the district court should first determine whether the appellants have prevailed on any of these counts. If the district court determines that the appellants have prevailed on any counts, the district court should then consider all relief requested by the appellants.

## C. Federal Rule of Civil Procedure 52(a)

Federal Rule of Civil Procedure 52(a) requires a district court, following a bench trial, to "find the facts specially and state separately its conclusions of law." The memorandum opinion contains several statements that lead this court to conclude

that this rule was not followed. In particular, the court stated that it "has determined that it would be impossible to go through and address each count [in the plaintiffs' complaint]." Mem. Op. at 10. Additionally, the court stated that "Counts I-IV, XIII, XVII, and XVIII contain allegations of discrimination . . . Although the Court did not analyze these counts, it would like to note that it found absolutely no evidence of discrimination." Id. at 21 n.17(Emphasis Added). For the reasons explained below, we are not satisfied that this statement provides the necessary analysis for us to evaluate the district court's decision on these counts.

This court has previously stated that the failure to specifically state the facts upon which a decision was reached can be reversible error. "If an appellate court does not know what facts the trial court took into consideration in drawing its conclusions, its findings become suspect." Duffie v. Deere & Co., 111 F.3d 70, 73 (8th Cir. 1997). Providing for a meaningful appellate review of a district court's decision is one of the primary purposes for placing this requirement on the district courts. Squirtco v. Seven-Up Co., 628 F.2d 1086, 1092 (8th Cir. 1980). However, we have also held that in some circumstances, "[w]hile appellate review would have been simplified if the district court had made more detailed findings . . . its ultimate findings are sufficient to meet the requirements of Rule 52(a)." Collins v. Henderson, 180 F.3d 988, 990 (8th Cir. 1999).

In reviewing the remaining eight counts, we do not believe the district court made sufficient findings to subject its decision to meaningful appellate review on the discrimination counts (Counts I, II, III, XIII, XVII, & XVIII). However, with regard to the counts asserting that the SLHA has not complied with the requirements of the HOPE VI program, Counts VI & VIII, we feel that the district court made sufficient findings of fact and conclusions of law to allow us to resolve the legal questions presented in these counts.

14

## 1. Discrimination Claims Against the SLHA

Counts I, II, and III allege that the SLHA discriminated on the basis of race, sex and familial status, in violation of the Fair Housing Act, 42 U.S.C. § 3604(a) & (b), by implementing the proposed revitalization plan. In addressing these claims the district court stated: "[a]lthough the court did not analyze these counts, it would like to note that it found absolutely no evidence of discrimination." Mem. Op. at 21 n.17.

We recognize the district court "found absolutely no evidence of discrimination." Id. We also acknowledge that there may be cases where the evidence is so lacking that a statement similar to the one made by the district court in this case may be sufficient. However, the appellants presented evidence of disparate impact discrimination and we believe that the district court should have provided some explanation as to why that evidence is insufficient. See United States v. Badgett, 976 F.2d 1176 (8th Cir. 1992) (setting out the proper test to apply when analyzing alleged discrimination under the Fair Housing Act). As such, these three counts are remanded to the district court for a more thorough explanation on the appellants' disparate impact claims.

## 2. Failure to Affirmatively Further Fair Housing Claims Against HUD

Counts XIII, XVII, & XVIII all involve assertions that HUD failed to fulfill its duty to affirmatively further fair housing when it approved the HOPE VI plan and the City's Section 108 loan. In addition to the brief statement made by the district court in footnote 17, that it "did not analyze these counts," the district also made the following statement:

> Finally, plaintiffs requested that the Court enjoin the federal defendants to 'take all necessary steps to further fair housing affirmatively in the HOPE VI program.' Obviously, HUD believes that it has taken all necessary steps to further fair housing. If plaintiffs are requesting that

15

the Court set out detailed steps, it will not do so. First, although the Court can review agency decisions, it has little authority to direct an agency on exactly what to do, exactly how to do it, and exactly how to fund it. Similarly, the Court is not going to give specific instructions to the defendants, telling them how they should involve plaintiffs in the planning, implementing, and monitoring of the HOPE VI plan.

Mem. Op. at 19. In light of these two statements, we are convinced that the district court failed to make sufficient findings that HUD had complied with its duty to affirmatively further fair housing.

HUD has a duty to affirmatively further fair housing. See 42 U.S.C. § 3608(e)(5) (providing HUD's duty to "administer the programs and activities relating to housing and urban development in a manner affirmatively to further the policies of this subchapter"). Appellants have presented evidence that HUD failed to consider the ramifications of the proposed HOPE VI program on HUD's obligation to affirmatively further fair housing. This evidence was not discussed by the district court. Instead the court stated only that "HUD believes that it has taken all necessary steps to further fair housing." This statement does not involve the analysis required by F.R.C.P. 52(a).

Both parties cite to N.A.A.C.P. v. Secretary of Housing and Urban Development, 817 F.2d 149 (1st Cir. 1987). This case explains the extensive scope of HUD's requirements to affirmatively further fair housing.

[42 U.S.C. § 3608(e)(5)] does not limit HUD's liability to *purposive* support of discrimination by others, nor does it limit HUD's "discriminatory action" to activity that itself forecloses housing opportunities on the basis of race. Rather, it includes within the scope of such action a failure to "consider the effect of a HUD grant on the racial and socio-economic composition of the surrounding area." And, the need for such consideration itself implies, at a minimum, an obligation to assess negatively those aspects of a proposed course of

16

action that would further limit the supply of genuinely open housing and to assess positively those aspects of a proposed course of action that would increase that supply.

N.A.A.C.P. at 156 (emphasis in original). Given the scope of this requirement, on remand the district court should provide a more detailed explanation for its conclusion that HUD appropriately considered its duty to affirmatively further fair housing.

Finally, we note that if the district court determines that HUD did not fulfill its duty to affirmatively further fair housing, the district court has the authority to review HUD's decision. 5 U.SC. § 706(2) states that a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." A district court's authority to review HUD's decisions was explained by the court in N.A.A.C.P.:

Clearly, HUD possesses broad discretionary powers to develop, award, and administer its grants and to decide the degree to which they can be shaped to help achieve Title VIII's goals. This fact, however, does not in itself mean that HUD is immune from review for "abuse of discretion" in exercising those powers.

Id. at 157. If the district court determines that HUD abused its discretion, the district court has the authority to enjoin the use of HOPE VI grant funds or Section 108 loan guarantees until HUD satisfies the court that it has taken appropriate steps to affirmatively further fair housing.

### 3. Allegations that the SLHA Failed to Comply with the Requirements of the HOPE VI Program

Counts VI & VIII allege that the SLHA violated the requirements of the HOPE VI program in adopting the revitalization plan for the Darst-Webbe complex. The

appellants conceded in their reply brief that their claim in Count VIII is not enforceable under 42 U.S.C. § 1983 in light of the Supreme Court's decision in Gonzaga Univ. v. Doe, 536 U.S. 273 (2002). Because appellants have waived this count, we will not analyze it and we affirm the district court's decision in favor of the appellees on Count VIII. The SLHA also argued that appellants' claim in Count VI was unenforceable in light of Gonzaga. Because we have determined that appellants have not prevailed on this claim, we need not address whether the Court's decision in Gonzaga would bar this claim.

Count VI alleges that the SLHA is violating the requirements of the HOPE VI program because it is not replacing the demolished units at the Darst-Webbe complex with sufficient affordable and large family housing units to accomodate the displaced tenants. Unlike the discrimination claims against the SLHA and the allegations that HUD failed to affirmatively further fair housing, the appellants' arguments regarding Count VI involve an interpretation of law. We disagree with appellants' assertion that the district court did not comply with F.R.C.P. 52(a) in addressing this count and that it needs to be remanded for further findings of fact and conclusions of law.

Appellants assert that Congress required recipients of HOPE VI grants to provide housing for all displaced tenants. Appellants point to language contained in the 1992 appropriations legislation for the HOPE VI program which states, "persons displaced by the reconstruction activities provided for herein shall be eligible for these replacement units. . . ." Pub. L. No. 102-389, 106 Stat. 1571 (1992). Appellants contend that Congress intended the "eligibility" requirement as a mandate that HOPE VI grant recipients provide sufficient affordable replacement housing units for all displaced tenants. They argue that the SLHA has not complied with this requirement because the revitalization plan includes provisions for constructing only 80 low-income housing units, instead of replacing the over 200 units that were occupied at the time the revitalization plan was submitted. They also claim that the displaced tenants cannot afford to live in the other units being built.

18

We do not agree with appellants that Congress meant to equate eligibility with affordability. Additionally, even if Congress intended to require HOPE VI grant recipients to provide replacement housing for all displaced tenants, the SLHA has met this requirement by offering all displaced tenants Section 8 housing vouchers. Finally, we note that even if eligibility originally meant affordability, that requirement has now been superseded by the 1998 amendments to 42 U.S.C. § 1437v.

Equating eligibility with affordability and thus requiring recipients of HOPE VI grants to provide the same number of low-income rental units that existed prior to the enactment of this legislation would run contrary to the goals of the HOPE VI program. Among the goals Congress envisioned is decreasing the density of public housing complexes. 58 Fed. Reg. 16590, 16591 (March 29, 1993). While adding 120 additional public housing units in this case might not run contrary to this goal, requiring HOPE VI grant recipients to always provide sufficient low-income housing units for displaced tenants would. We also note that the SLHA has attempted to provide housing for the displaced tenants in other ways than building the requested number of low-income units. The SLHA provided each displaced tenant with a Section 108 voucher to use in finding replacement housing. Additionally, the SLHA has granted the displaced residents priority in applying for the replacement housing that is being created through the HOPE VI revitalization project.

Finally, we note that to the extent the SLHA's plan would conflict with the requirements specified in the 1992 appropriation's legislation, those goals, at least in regards to replacement housing, have been superseded by subsequent legislation. In particular, 42 U.S.C. § 1437v (e)(3) was added in 1998. It allows HOPE VI grants to be awarded for "demolition only." This change indicates that even if Congress originally intended HOPE VI grant recipients to provide sufficient replacement housing by imposing an eligibility requirement, Congress no longer intends to require HOPE VI grant recipients to replace demolished housing units.

19

Because we do not find that the district court erred as a matter of law in determining that the SLHA was not required under the HOPE VI program to provide additional low-income public housing units, we affirm the district court's decision on Count VI.

## IV. Conclusion

We sympathize with the difficult situation the district court faced in resolving this complicated case. While we do not necessarily disagree with the ultimate conclusion reached by the district court, we are unable to affirm the district court on six of the original nineteen counts, because the memorandum opinion fails to provide the detail required by F.R.C.P. 52(a), regarding the rationale for the district court's decision. As such, we affirm the district court's decision on all counts except for Counts I, II, and III against the SLHA and Counts XIII, XVII, & XVIII against HUD.

On remand, the district court should provide more detailed findings concerning these six counts. We leave it to the district court's discretion whether to base this analysis on the current record or require the parties to provide additional evidence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT