# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3514
_____

Norman Rille, United States of America, ex rel.; Neal Roberts, United States of America, ex rel.,

*Plaintiffs - Appellees*,

United States of America,

*Intervenor plaintiff - Appellant*,

v.

PricewaterhouseCoopers LLP; PWC Consulting LLC; International Business Machines, Inc.; IBM Global Services Company; Oracle Corporation; Boeing Company; Cisco Systems, Inc.; Exostar Corporation; Exostar LLC; Lockheed Martin Corporation,

*Defendant*s.
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: April 15, 2015
Filed: October 5, 2015
_____

Before RILEY, Chief Judge, WOLLMAN, MURPHY, BYE, SMITH, COLLOTON, BENTON, and SHEPHERD, Circuit Judges, En Banc.
_____

COLLOTON, Circuit Judge.

As the Supreme Court has observed, "[t]he False Claims Act's qui tam provisions present many interpretive challenges." *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970, 1979 (2015). In this case, two private parties, called "relators," brought an action in the name of the United States against several government contractors, alleging that the contractors defrauded the government. The United States, after investigating the case, elected to proceed with the action against several defendants in place of the relators, and the government eventually reached a settlement with two of the contractors. There followed a dispute between the relators and the government over how much, if any, of the recovery should be allocated to the relators. The district court awarded the relators a percentage of the entire settlement.

This appeal raises a legal question under the Act: When the government proceeds with an action brought by a relator under the False Claims Act, and then settles both the claim brought by the relator and a different claim that does not overlap factually with the claim brought by the relator, is the relator entitled to a share of the proceeds of both claims? The better view according to the text and structure of the statute is that the relator may recover only from the proceeds of the settlement of the claim that he brought. Because the district court's order does not clearly apply this legal standard or make factual findings that are necessary to resolve the case under this standard, we vacate the order and remand for further proceedings.

I.

In September 2004, Norman Rille and Neal Roberts, as relators, sued several government contractors on behalf of the United States, alleging violations of the False Claims Act, 31 U.S.C. §§ 3729-3733. The contractors were either "systems integration consultants" who recommend hardware and software products to meet the government's information technology needs, or technology vendors who supply those products. The relators' original complaint alleged a kickback scheme, under which

the vendors allegedly paid kickbacks to the consultants in exchange for the consultants recommending the products of the vendors to the government.

The relators added Cisco Systems, Inc., as a defendant contractor in September 2005. Shortly thereafter, the relators offered the government some 700,000 pages of documents; according to the relators, these documents contained evidence of kickbacks and defective pricing involving Cisco and other defendants. Earlier in 2005, the Inspector General in the General Services Administration selected 112 government contracts for review. Among those was a contract with Comstor, a distributor of Cisco products. Comstor's contract allowed it to sell Cisco's technology products and services to government agencies. After the audit, the Inspector General concluded that Comstor made inaccurate or incomplete disclosures to the government, and failed to comply with price reduction obligations under the contract.

In October 2006, the relators amended their complaint to allege that the defendant contractors failed to provide "current, accurate, and complete disclosure of their best pricing . . . , thereby causing defective GSA and other government pricing schedules." According to the new allegation, the defective pricing resulted in violations of the False Claims Act "as to both direct sales to the Government by a Defendant, and indirect sales through [a vendor], with or without a Kickback." In April 2007, the government elected to intervene in part of the action, but declined to intervene against Cisco at that time, as the government had not completed its review of the company.

In March 2008, the government moved to intervene against Cisco. The government explained that since April 2007, it had "received and considered additional information from the Relators," and that it had "also obtained and assessed considerable additional information and documents from Cisco, as well as a number of non-party witnesses that it had not had an opportunity to consider prior to April

2007." After the district court granted the motion in April 2008, the government proceeded with the action as filed by the relators against Cisco and other defendants.

After two years of negotiation, the government reached a settlement with Cisco and Comstor under which Cisco agreed to pay the government $44.16 million, and Comstor agreed to pay $3.84 million. According to the agreement, the government alleged that Cisco and Comstor engaged in the following "Covered Conduct":

> (1) made inaccurate and/or incomplete disclosures and/or false statements, and/or presented or caused to be presented false claims to the United States; (2) failed to disclose relevant discount, rebate, true-up, benefits, credits, value-added, and pricing information to the United States and, as a result, Contract pricing and orders issued pursuant to the Contract were inflated; (3) as a result of the defective disclosures of pricing information, submitted or caused to be submitted false or fraudulent claims for payment; and (4) failed to comply with price reduction obligations under the Contract and related letters of supply.

The agreement also provided for the dismissal of the relators' action against Cisco, but did not resolve the issue of the relators' entitlement to a share of the settlement proceeds.

Following the settlement, the relators moved to recover a share of the proceeds. The applicable statute allows a relator to receive "at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action." 31 U.S.C. § 3730(d)(1). The government objected to recovery on the ground that the relators' complaint did not plead the conduct that formed the basis of the claims that the government ultimately settled with Cisco and Comstor. The government maintained that the relators' claims based on an alleged kickback scheme lacked merit, and that the settlement covered a separate defective pricing scheme.

-4-

The district court rejected the government's argument and awarded the relators seventeen percent of the $44.16 million paid by Cisco and fifteen percent of the $3.84 million paid by Comstor. *United States ex rel. Rille v. Cisco Sys., Inc.*, No. 4:04CV00988-BRW, 2011 WL 4352309, at *4 (E.D. Ark. Sept. 19, 2011). The government appeals the order.

## II.

The False Claims Act provides that a private person "may bring a civil action for a violation of section 3729 for the person and for the United States Government." 31 U.S.C. § 3730(b)(1). Section 3729 establishes liability for certain acts that constitute false claims against the government. When a private person brings an action under § 3730(b), the government has the option to "proceed with the action" or to "decline[] to take over the action." *Id.* § 3730(b)(4). If the government "proceeds with an action brought by a person under [§ 3730](b)," then the private person is entitled, with an exception not relevant here, to receive a percentage of "the proceeds of the action or settlement of the claim." *Id.* § 3730(d)(1).

The relators contend that if the government proceeds with an action brought by a relator, then the relator is automatically entitled to a percentage of any "proceeds" that the government receives as a result. In their view, it does not matter whether the claim settled by the government is factually related to the claim brought by the relators. As long as the settled claim is resolved in an action that was initiated by the relators, the relators say that they are entitled to recovery. Although the provisions of the False Claims Act do not always "operate together smoothly like a finely tuned machine," *Kellogg*, 135 S. Ct. at 1979, we conclude that the statute will not bear the construction advanced by the relators.

The relators are entitled to a share of "the proceeds of the action or settlement of the claim." 31 U.S.C. § 3730(d)(1). The Act contemplates that both a relator's

-5-

"action" and relator's "claim" are filed in court: Section 3730(e)(4)(A) provides that "[t]he court shall dismiss an action or claim" brought by a relator under certain circumstances. The statute also distinguishes between two courses of action for a relator—"bringing the action" and "settling the claim." 31 U.S.C. § 3730(d)(2). When addressing the relator's right to recover proceeds, the statute's distinction between "the action" and "settlement of the claim" reads as though the first object ("proceeds of the action") captures proceeds of an action litigated to judgment and the second object ("proceeds of the . . . settlement of the claim") encompasses proceeds of a settlement. If proceeds of a settlement were covered by the first object concerning "proceeds of the action," then the second object concerning settlement of the claim would be superfluous.[1]

This case involves a settlement. With respect to settlement, § 3730(d)(1) is clear that the relator's share is based only on proceeds of "the claim." The use of the definite article refers back to the claim that is "brought by" the relator in "an action" that he initiates. The next subsection of the statute likewise refers to the relator "settling *the claim*" that he brought, in a case where the government does not proceed with the action. 31 U.S.C. § 3730(d)(2) (emphasis added). The settlement language of § 3730(d)(1) thus does not extend to a different claim that is settled by the government when that claim was not originally "brought by" the relator. The relators' right to recovery is limited to a share of the settlement of the claim that they brought.

The relators focus on the phrase "proceeds of the action," and assert that "once the Government intervenes in the relators' action and receives its proceeds," the relator is entitled to a share of all the proceeds. Appellees' Br. at 25. Even assuming the proceeds-of-the-action language applies in the case of a settlement, the phrase

---

[1]The dissent's answer is that when a relator brings only a single claim, and the government settles that claim, the proceeds of the settlement are not "proceeds of the . . . settlement of the claim." *Post*, at 12. We reject that view as contrary to the plain meaning of the text.

-6-

"proceeds of the action" refers back to "an action brought by a person." The relators would have this mean proceeds not of the action *as brought by the relators*, but of the action as developed after intervention by the government. As a textual matter, this seems unnatural. The phrase "proceeds of the action" is paired with "proceeds of the . . . settlement of the claim," and the settlement language refers to "the claim" brought by the relator, not a claim later added by the government. It would be odd to read the adjoining phrase—"proceeds of the action"—to encompass more than the action as brought by the relator. It also would be inconsistent with the purposes of the Act to permit a relator automatically to receive a share of the proceeds when the relator might have had nothing to do with the government's recovery on a particular claim that was added after the government's intervention.

The relators' reading would create unwarranted disparities in recovery depending on how the government pursues a new claim. The government has a choice: it may add a new claim while proceeding with an action brought by a relator, or it may pursue the same new claim through the use of an alternative remedy. Section 3730(c)(5) provides that if the government pursues "its claim through any alternate remedy available to the Government," then "the person initiating the action shall have the same rights" in the alternate proceeding "as such person would have had" if the government had proceeded with the original action. This means that "the relator has a right to recover a share of the proceeds of the alternate remedy to the same degree that he or she would have been entitled to a share of the proceeds of an FCA action." *United States ex rel. Barajas v. United States*, 258 F.3d 1004, 1010 (9th Cir. 2001) (internal quotation omitted).

When the government recovers from a defendant in an alternate proceeding, however, a relator is not entitled to a share of *whatever* recovery the government obtains, just because the government's claim could have been added to the original action brought by the relator. As the Sixth Circuit explained in *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634 (6th Cir. 2003), a relator

seeking recovery must establish that "there exists [an] overlap between Relator's allegations and the conduct discussed in the settlement agreement." *Id*. at 651. A relator is not entitled to a share of the proceeds derived from a non-overlapping claim that the government could have added in the original action but instead pursues in an alternate proceeding. Given the equivalence of recovery required by § 3730(c)(5) and § 3730(d), it follows that the relator also has no right to a share if the government adds the non-overlapping claim to the original action after intervening. Of course, the government also may settle a non-overlapping claim without filing it in court. Nothing in the Act requires the government to generate unnecessary litigation.

The question in this case, therefore, is whether the government's recovery from Cisco and Comstor is the "proceeds of the . . . settlement of the claim," that is, "the claim" brought by the relators. We agree with the Sixth Circuit that these proceeds of "the claim" must extend to proceeds of a settlement in which "the conduct contemplated in the settlement agreement . . . overlap[s] with the conduct alleged in [the] Relator's complaint." *Bledsoe*, 342 F.3d at 651. Otherwise, the government could deprive the relator of his right to recover simply by recasting the same or similar factual allegations in a new claim or by pursuing the substance of the relator's claim in an alternate proceeding. But there must be a factual overlap for the relators to recover.

In its September 2011 order determining the relators' share of settlement proceeds, the district court did not make adequate factual findings to allow appellate review of whether the settlement was based on claims that factually overlapped with the claims brought by the relators. *See* Fed. R. Civ. P. 52(a); *King v. United States*, 553 F.3d 1156, 1161-62 (8th Cir. 2009); *Darst-Webbe Tenant Ass'n Bd. v. St. Louis Hous. Auth.*, 339 F.3d 702, 711-12 (8th Cir. 2003). At one point, the court said that the allegations in the relators' complaint "appear to fit within the definition of Covered Conduct" under the settlement agreement, *United States ex rel. Rille*, 2011 WL 4352309, at *3, but this cryptic statement is not sufficient to afford this court "a

clear understanding of the basis of the trial court's decision." *Allied Van Lines, Inc. v. Small Bus. Admin.*, 667 F.2d 751, 753 (8th Cir. 1982).

Elsewhere, the district court apparently relied on its conclusion that the relators "were the catalyst leading to the Government's settlement," while acknowledging that the relators "were more focused on a kickback scheme that the Government asserts did not exist." *United States ex rel. Rille*, 2011 WL 4352309, at *4. A panel of this court in *Roberts v. Accenture, LLP*, 707 F.3d 1011 (8th Cir. 2013), appeared to accept this "catalyst" theory as a basis for recovery, on the view that a causal connection between the relator's claim and a later settlement is sufficient to show that a settlement is "related" to a claim brought by the relator. *Id.* at 1017.

Whatever the merit of this theory as a policy matter, it is not derived from the statute. The statute allows relators to recover a percentage of the proceeds of the settlement of "the claim" brought by the relators, and only that claim. The Act contemplates that the government, after it elects to intervene, may "clarify or add detail" to the claims brought by the relators, or may "add any additional claims." 31 U.S.C. § 3731(c). Recovery under § 3730(d)(1), however, does not extend to proceeds of the settlement of such "additional claims," whether or not they are causally connected to the claim brought by the relators. The Act does not provide for an award to relators from the proceeds of settlements that "resulted from" the claim or were "caused by" the claim; relators are limited to a percentage of "proceeds of the . . . settlement *of the claim*."

For these reasons, we conclude that the case must be remanded for application of the correct legal standard and adequate findings of fact. To resolve the relators' claim for recovery, the district court should make findings about whether there is a factual overlap between the claim or claims settled by the government and the claims brought by the relators, such that proceeds of the settlement (or any portion thereof)

should fairly be characterized as "proceeds of the . . . settlement of the claim" brought by the relators.[2]

The district court's order of September 19, 2011, R. Doc. 237, is vacated, and the case is remanded for further proceedings.

BYE, Circuit Judge, with whom SMITH, Circuit Judge, joins, dissenting.

I would affirm the district court's order awarding Norman Rille and Neal Roberts (the relators) a statutorily-required portion of the government's settlement of the relators' action. The district court did not apply an incorrect legal standard to the undisputed facts of this case, nor were the district court's fact findings inadequate for us to review and affirm the relators' award. I disagree with the Court's textual interpretation of the statute, and do not believe we should decide the legal question framed by the Court because it cannot be squared with the actual facts involved here. I therefore respectfully dissent from the decision to vacate the district court's award and to remand for further proceedings.

I

The Court frames the legal question in this appeal as whether a relator is entitled to a share of settlement proceeds when the government "settles both the claim brought by the relator and a different claim that does not overlap factually with the

---

[2]In its opening brief, the government argued that the relators are not entitled to any share of the settlement proceeds because their defective pricing claim was legally insufficient under Federal Rule of Civil Procedure 9(b). A panel of this court rejected a comparable contention in *Roberts*, 707 F.3d at 1017-18, and the government does not pursue its Rule 9(b) argument before the en banc court. At oral argument, the government sought a remand for findings on whether the claim settled by the government overlapped factually with the claims brought by the relators.

claim brought by the relator." <u>Ante</u> at 2. Because the government never brought a different claim in the relators' action, the question framed by the Court is not before us.

I would frame the question as whether proceeds received by the government after intervening in, settling, and dismissing with prejudice a relator's action constitute "proceeds of the action" under 31 U.S.C. § 3730(d)(1). Under the facts present in this case, I agree with the relators' contention that the False Claims Act (FCA) contains just two preconditions relevant to such an award: (1) the government "proceeds with an action" originally brought by the relator, and (2) the government receives "proceeds of the action." This plain and straightforward textual construction reflects the views expressed by Congress in enacting the FCA that a relator is entitled to a minimum 15% "finders fee" whenever the government elects to intervene in a relator's action and receives proceeds from the resolution of that action (subject to certain statutory exceptions not present here). <u>See</u> <u>Roberts v. Accenture, LLP</u>, 707 F.3d 1011, 1016 (8th Cir. 2013) ("If the Government comes into the case, the person is guaranteed a minimum of 15% of the total recovery even if that person does nothing more than file the action in federal court." (quoting 132 Cong. Rec. H9382-03)).

To avoid this plain and straightforward reading of § 3730(d)(1), the Court reasons the phrase "proceeds of the action" does not refer to proceeds derived from the settlement of an action, but only captures proceeds of an action litigated to final judgment. The Court, however, does not explain the significance of a distinction between proceeds derived from the settlement of an action and proceeds derived from litigating an action to final judgment. Nor does the Court explain what purpose would be served within the FCA that would necessitate Congress creating such a distinction.

The Court further reasons that if the proceeds derived from the settlement of an action were covered by the phrase "proceeds of the action," then the phrase "settlement of the claim" would be superfluous. I do not follow this reasoning. An

-11-

action can be comprised of multiple claims. A single claim within an action can be settled, or an entire action can be settled, and both are common occurrences in litigation. If the government settles a single claim in a multi-claim action, the proceeds of the settlement naturally fall within § 3730(d)(1)'s reference to "settlement of the claim." If, however, the government settles the entire action, which was the case here, the proceeds of the settlement naturally fall within § 3730(d)(1)'s reference to "proceeds of the action." I do not understand why the phrase "settlement of the claim" is superfluous unless Congress necessarily meant to limit the phrase "proceeds of the action" to the proceeds of an action litigated to final judgment.[3]

The Court also rejects the relators' arguments even assuming the phrase "proceeds of the action" captures the settlement proceeds at issue in this case. The Court reasons that the proceeds must still derive from the action as originally brought by the relators, and not as developed after intervention by the government. Although I disagree with this premise (as I will explain later), the Court's explanation for its premise is telling because it identifies precisely why the legal question framed by the Court is not properly before us.

The Court explains that the settlement language referring to a "claim" must refer to "the claim" brought by the relator, and "not a claim later added by the government." Ante at 7. The court goes on to note "[i]t would be inconsistent with the purposes of the Act to permit a relator automatically to receive a share of the proceeds when the relator might have had nothing to do with the government's recovery on *a particular claim that was added* after the government's intervention." Id. (emphasis added). But those are not the facts of this case. The government *never added any claims* to the relators' action after intervening.

---

[3]The Court's reasoning is arguably inconsistent with other provisions in the FCA, which refer to the government settling the action, not just settling the claim. See, e.g., 31 U.S.C. § 3730(c)(2)(B) ("The government may *settle the action* with the defendant . . .." (emphasis added)).

-12-

As the Court notes, if the government wants to pursue a "different claim" it "has a choice:  it may add a new claim while proceeding with an action brought by a relator, or it may pursue the same new claim through the use of an alternate remedy." Id.  This first choice is set forth in § 3731(c), which allows the government – after intervening in the relators' action – to "file its own complaint or amend the complaint of a person who has brought an action under section 3730(b) to clarify or add details to the claims in which the Government is intervening and *to add any additional claims* with respect to which the Government contends it is entitled to relief." (emphasis added).  In this case, although the government participated in the relators' action for approximately two and a half years after intervening, the government never filed its own complaint setting forth a different claim than the claims brought by the relators.  Nor did the government amend the relators' complaint to clarify or add details to the relators' claims.  Nor did the government amend the relators' complaint to add any additional claims with respect to which it contended it was entitled to relief.  Rather, the only persons who made any claims in the relators' action were the relators.  This is undisputed.

The second of the government's two choices for pursuing a different claim is set forth in § 3730(c)(5), which says "the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty."  In this case, the government did not pursue a different claim through an alternate remedy under § 3730(c)(5), but instead elected to intervene in the relators' action.  Again, this is undisputed.

Identifying a "different" claim the government actually pursued – either within the relators' action via § 3731(c)'s formal pleading provisions, or outside the relators' action via § 3730(c)(5)'s alternate remedy provisions – would appear to be a necessary prerequisite to requiring the district court to compare a relator's claim with the government's claim to determine whether there is a factual overlap.

-13-

Instead of identifying when and in what manner it pursued a different claim, the government merely relies upon its inclusion of a reference to a particular contract between Cisco and Comstor in the settlement agreement, the fact that the Inspector General in the General Services Administration (GSA) audited that contract, and the fact that the Department of Energy (DOE), Office of Inspector General (OIG) issued a subpoena to Cisco as a result. While this certainly describes conduct that *could* form the basis for the government to pursue a claim as a result of its DOE/OIG investigation, it does not establish the government ever actually brought such a claim in accordance with § 3731(c)'s pleading provisions, or pursuant to § 3730(c)(5)'s alternate remedy provisions.

Because the only manner in which the government ever pursued its allegedly different claim was *within* the confines of the relators' action, such a "claim" can not as a matter of law be considered a different claim than the relators' claims because the government never availed itself of the choices available to it under § 3731(c). Moreover, while "a settlement pursued by the government in lieu of intervening in a *qui tam* action asserting the same FCA claims constitutes an 'alternate remedy' for purposes of 31 U.S.C. § 3730(c)(5)," United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 649 (6th Cir. 2003), the settlement pursued by the government here was not in lieu of intervening in the relators' action, but *within* the relators' action after electing to intervene.

II

The Court's decision has troubling ramifications. First, the Court's approach necessarily depends upon either ignoring § 3731(c)'s pleading provisions, excusing the government from complying with § 3731(c) when it advances a post-settlement litigation position disputing a relator's right to receive a share of the proceeds, or judicially adding a third option where the government can informally add a claim to

a relator's action in some manner other than through § 3731(c).[4]  I am not willing to ignore § 3731(c)'s pleading provisions, or excuse the government from having to comply with them.  Nor do I believe it is proper to construct a third option for the government that is not expressly set forth in the FCA.

I wonder what procedures would govern a judicially-constructed option allowing the government to add a claim to the relators' action in some manner other than as outlined in § 3731(c).  Would this option employ a different definition of "claim" than the one used by Congress at 31 U.S.C. § 3729(b)(2)(A)?  Is the government required to give the relators notice when it informally adds a claim to their action?  Does the government at least have to inform the district court when it informally adds a claim to a *qui tam* action?  Does an informally-added claim relate back to the original complaint for statute of limitations purposes in the same manner as when the government actually adds a claim in the "Government pleading" discussed in § 3731(c)?  I agree the FCA presents "many interpretive challenges," Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter, 135 S. Ct. 1970, 1979 (2015), but following the Court's approach would cross the line between interpretation and legislation.

Second, the Court's factual overlap remand is unsound, and I am concerned it will confuse the district court in this case and district courts who have to wrestle with future FCA cases.  Describing certain conduct in a settlement agreement does not equate to pursuing a claim, so where is the "different" government claim the district

---

[4]To the extent § 3731(c)'s use of the word "may" is permissive, it merely permits the government to choose between filing its own complaint or amending the relators' complaint.  If the government elects to add a claim in one of those manners, however, the statute does not give the government a second permissive choice between adding the claim through a formal pleading, or adding the claim in some other unspecified informal manner.  See 31 U.S.C. § 3731(c) (expressly referring to the "Government pleading" contemplated by Congress).

court is supposed to compare to the relators' claims? In this case, where the conduct described by the government as a "different claim" was settled within an action comprised exclusively of the relators' claims, there is no government claim to compare to the relators' claims.

Typically, a factual overlap analysis is required in cases arising under § 3730(c)(5)'s alternate remedy provisions, not intervention cases governed by § 3730(d)(1). When the government elects not to intervene in a relator's action, and instead pursues a claim through an alternate remedy, courts look to determine whether there is a factual overlap between the claims pursued in the relator's action, and the claims pursued in the government's independent action, because "the relator has a right to recover a share of the proceeds of the alternate remedy to the same degree that he or she would have been entitled to a share of the proceeds of an FCA action." United States ex rel. Barajas v. United States, 258 F.3d 1004, 1010 (9th Cir. 2001) (internal quotation omitted). In such a case, a district court can conduct a side-by-side comparison of the claims pursued in the relator's action, and the claims pursued by the government in an alternate proceeding, to determine whether there is a factual overlap.

Significantly, the Court does not cite any cases where a court has held a factual overlap analysis applies in an intervention case.[5] In fact, the Court cites just two cases when discussing the need for a factual overlap remand – Barajas and Bledsoe. Both Barajas and Bledsoe involved alternate remedy proceedings arising under § 3730(c)(5), not intervention proceedings governed by § 3730(d)(1).

---

[5]One of the government's arguments in Roberts could arguably be construed as a contention that a "factual overlap" analysis is required in an intervention case. See Roberts, 707 F.3d at 1017. We rejected the government's argument on the facts, however, and thus never addressed the legal question framed by the Court in this case. See id.

-16-

In this intervention case, it is improper to address the legal question whether a factual overlap analysis applies because the government never brought a separate claim under § 3731(c). But even if the government had complied with § 3731(c)'s pleading provisions and had actually added a claim to the relators' action, such that the question framed by the Court was properly before us, the Court's wholesale adoption of the alternate remedy factual overlap analysis would still be wrong.

As we discussed in Roberts, Congress expressly outlined the three specific situations where a relator's recovery may be reduced in intervention cases. See Roberts, 707 F.3d at 1016. The first statutory exception for reducing a relator's recovery in an intervention case is where the relator "planned and initiated" the FCA violation. 31 U.S.C. § 3730(d)(3). The second is where the relator "is convicted of criminal conduct arising from his or her role in the violation." Id. The third statutory exception is a limitation of the relator's share of the recovery to "no . . . more than 10 percent of the proceeds" where the relator's "action is one which the court finds to be based primarily on disclosures of specific information" traceable to a source other than the relator. Id. § 3730(d)(1).

Congress clearly envisioned situations where the government may add additional claims to a relator's action under § 3731(c), and yet did not see fit to create a fourth exception allowing for a reduction of a relator's share of the recovery in such situations. The Court's adoption of the alternate remedy factual overlap analysis in an intervention case would create a fourth exception allowing a reduction not contemplated by Congress. Again, this approach would cross the line between interpretation and legislation.

Here, the government contends the relators' action was unrelated to what I will call the "Comstor conduct" outlined in the settlement agreement, and thus relators should not receive any portion of the settlement proceeds because the government discovered the "Comstor conduct" through the GSA audit and ensuing DOE/OIG

-17-

investigation. The government further contends the entire settlement is attributable to the "Comstor conduct."

Under the Court's approach, on remand the district court is supposed to determine whether that different "claim" (even though the government never added such a claim to the relators' action) overlaps factually with the relators' claims. If there is no overlap, the relators will receive no portion of the settlement proceeds attributable to the "Comstor conduct." And if the district court finds that the entire settlement of the relators' action was attributable to the "Comstor conduct," then the relators will receive no portion of the settlement proceeds whatsoever, because such a "claim" was not part of the action as originally brought by the relators.

With all due respect, that is not how the FCA operates in intervention cases. In an intervention case, even if the government had asserted and was successful in showing the "Comstor conduct" was based on disclosures of information traceable to a source other than the relators, and even if the government had asserted and was successful in showing the disclosure of the "Comstor conduct" resulted in the relators' entire action being based "primarily" on those disclosures, the relators *would still be entitled to at least ten percent of the entire recovery*, not just the portion of the recovery attributable to the claims as originally brought by the relators.[6] See 31 U.S.C. § 3730(d)(1) ("Where the action is one which the court finds to be based primarily on disclosures of specific information . . . relating to allegations or transactions in a . . . Government Accounting Office report, hearing, audit, or investigation . . . the court may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation."). Thus, the appropriate inquiry requires a review of the entire action to

---

[6]The government has never contended the relators do not qualify as original sources of the information in their *qui tam* action under § 3730(e)(4)(A).

determine the primary basis of the action, and does not involve an analysis of the factual overlap of individual claims within the action.

Under the Court's approach, if the government had actually added a claim to the relators' action which was based upon disclosures of specific information traceable to a source other than the relators (something not done here), and that additional claim did not overlap factually with the relators' claim, the relators would not be entitled to *any portion whatsoever* of the settlement proceeds arising from such a claim. This approach – essentially a fourth exception for reducing a relator's recovery not set forth in the FCA – cannot be reconciled with the express provisions found in § 3730(d)(1).[7]

The government's choice to intervene in this case clearly triggers specific FCA provisions that require different inquiries than those applicable to alternate remedy proceedings. An examination of this record always exposes the same fundamental flaw in the government's position – the government never added any of its own claims in the relators' action after intervening. The government's failure to avail itself of the formal pleading provisions set forth in § 3731(c) is dispositive as a matter of law.

---

[7]The government only made two arguments in the district court when challenging the relators' right to recover a share of the settlement proceeds: (1) its "different claim" argument; and (2) a Rule 9(b) argument which it chose not to pursue in these en banc proceedings. Notably, the government has never argued the relators' recovery should be limited to ten percent pursuant to § 3730(d)(1)'s statutory exception. The government's ability to rely upon this statutory exception has therefore been waived, and the fifteen percent to twenty-five percent provisions of § 3730(d)(1) govern this case. See George K. Baum & Co. v. Twin City Fire Ins. Co., 760 F.3d 795, 803 (8th Cir. 2014) (explaining that arguments not raised in the district court are waived, as are arguments not raised on appeal).

## III

Finally, even assuming the district court was required to do some sort of factual overlap analysis under the circumstances present here, I find nothing lacking in the factual findings actually made by the district court. The district court compared the facts the government described in the settlement agreement as the "Covered Conduct" to the allegations in the relators' complaint. The district court then concluded the relators' claims "appear to fit" with the facts described by the government in the settlement agreement.

We can quibble about whether the district court's use of the phrase "appear to fit" is simply a colloquial expression for "does fit" or an equivocal statement. But the fact of the matter is, the conduct described by the government in the settlement agreement *does* fit within the claims made by the relators in their action, and there is nothing unclear about this record that requires a remand. In the settlement agreement, the government described the particular GSA contract it contends was the source of its "different claim," and alleges with respect to that particular contract that Cisco and Comstor:

> (1) made inaccurate and/or incomplete disclosures and/or false statements, and/or presented or caused to be presented false claims to the United States; (2) failed to disclose relevant discount, rebate, true-up, benefits, credits, value-added, and pricing information to the United States and, as a result, Contract pricing and orders issued pursuant to the Contract were inflated; (3) as a result of the defective disclosures of pricing information, submitted or caused to be submitted false or fraudulent claims for payment; and (4) failed to comply with price reduction obligations under the Contract and related letters of supply.

This language is indistinguishable in meaning from the claims outlined in the relators' third amended complaint, which alleged that "Defendants failed to provide to GSA and other government agencies current, accurate and complete disclosure of

their best pricing (after all discounts, rebates, and other benefits)." And why would the government ever include conduct unrelated to the relators' action in the settlement of the relators' action to begin with? This makes no sense.

It is clear to me the district court saw through the government's transparent attempt to dissociate the settlement proceeds from a *qui tam* action comprised exclusively of relators' claims, and appropriately awarded the relators a share of the "proceeds of the action."

## IV

In sum, the government's position is flawed on at least three levels: (1) it depends upon a strained and incorrect reading of the phrase "proceeds of the action;" (2) it is based upon the factually incorrect premise that the government added a different claim to the relators' action; and (3) it advocates for the wholesale adoption of a claim-by-claim factual overlap analysis applicable in § 3730(c)(5) alternate remedy proceedings that cannot be reconciled with express FCA provisions applicable in intervention cases.

The government's position was correctly rejected in the original panel decision after exposing its first flaw, without having to address or discuss its other flaws. It should be rejected now in these en banc proceedings for the same reason.

I respectfully dissent.

_____